939 So.2d 6 (2006)
OCWEN LOAN SERVICING, LLC, as successor in interest to Ocwen Federal Bank, FSB
v.
Willie Mae WASHINGTON.
1041631.
Supreme Court of Alabama.
March 17, 2006.
*7 John E. Goodman, Benjamin M. Moncrief, and Brian M. Blythe of Bradley Arant Rose & White, LLP, Birmingham, for appellant.
R. Cooper Shattuck and Jane L. Calamusa of Rosen, Cook, Sledge, Davis, Shattuck & Oldshue, P.A., Tuscaloosa, for appellee.
LYONS, Justice.
Ocwen Loan Servicing, LLC, as successor in interest to Ocwen Federal Bank, FSB ("Ocwen"), appeals from the trial court's order denying its motion to compel arbitration. We affirm.

I. Facts and Procedural History
Willie Mae Washington owned her residence in Greensboro free and clear of any encumbrances. She contacted Malone-Gordon Mortgage and Investments, Inc. ("Malone-Gordon"), a mortgage broker in Tuscaloosa, in September 1998 based upon advertisements she had heard on the radio and sought a loan. Malone-Gordon secured a loan for Washington with Morcap, Inc., and she thereafter executed a promissory note in favor of Morcap secured by a mortgage on her residence in Greensboro. Washington says that shortly after the loan closing Morcap assigned, sold, or transferred her note to an entity that remains unknown to her. She says that Southern Pacific Funding initially serviced her loan, followed by Aurora Loan Services. *8 Ocwen began servicing the loan in September 1999.
An arbitration agreement executed by Washington in connection with the loan transaction provided: "[Y]ou and we agree that any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this Agreement." "You" is defined as "the person named below," i.e., Washington, and "we" or "us" is defined as Morcap, Inc., the lender. The agreement states: "Only disputes involving you and us may be addressed in the arbitration." "Dispute" includes: "[A]ny claim, controversy, disagreement or lawsuit of any nature whatsoever arising out of or in any way related to the loan; the arranging of the loan; any application, inquiry or attempt to obtain the loan; the closing and funding of the loan; the terms of the loan; any loan documents; the servicing, collecting and enforcing of the loan; or any other aspect of the loan transaction." The agreement further provides that it "shall also apply to any dispute with us or our corporate parents, affiliates, subsidiaries, agents, employees, officers, directors, successors and assigns." The agreement further provides that either party can request that a dispute be submitted to arbitration, stating: "Either you or we can do this before a lawsuit (which is usually initiated by the filing of a `complaint') has been served or within sixty (60) days after a complaint, an answer, a counterclaim or an amendment to a complaint has been served." Exempted from arbitration are
"(1) any judicial or non-judicial foreclosure proceeding against the property that serves as collateral for the loan, whether by the exercise of any power of sale under any deed of trust, mortgage or other security agreement or instrument under applicable law, (2) any action by us to take possession of the property securing the loan, including repossession or unlawful detainer action, or any action to obtain a deficiency judgment against you and enforce same pursuant to applicable law, or (3) any action to obtain or transfer title to the property being foreclosed or to otherwise exercise our legal rights in the property or to dispose of the property determined pursuant to the terms of the instruments evidencing the loan and any security instrument relative thereto and/or pursuant to applicable law."
Washington was advised in September 1999 to send payments on her loan to Ocwen. She says that Ocwen threatened her with foreclosure numerous times while it was servicing her loan. Washington received at least two letters from Ocwen notifying her that she was in default on the promissory note and that she had the right to bring a court action to assert the nonexistence of the default or to assert any other defenses to foreclosure and the acceleration of the note. Further, Ocwen's attorneys sent Washington several letters stating that her note had been accelerated and that she had the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense she had to the acceleration of the note and the foreclosure sale. Washington disputed the amounts Ocwen said she owed. Washington says that several times the foreclosure process proceeded to the point that Ocwen published notice of foreclosure in a newspaper published in Hale County.
Washington sued Ocwen, the attorneys representing Ocwen, and Malone-Gordon in the Hale Circuit Court on June 3, 2004, asserting a variety of claims relating to the propriety and disclosure of fees, penalties, and finance charges assessed and collected in originating and servicing her mortgage *9 loan. Service was never perfected on Malone-Gordon, and Washington has dismissed her claims against the attorneys representing Ocwen; Ocwen is the only defendant remaining in the case.[1] On September 27, 2004, Ocwen removed the action to the United States District Court for the Southern District of Alabama. Washington's motion to remand was granted on January 19, 2005. On March 23, 2005, Ocwen filed a motion to compel arbitration, relying upon the arbitration agreement executed between Washington and Morcap. Washington opposed the motion to compel arbitration, contending that it did not apply to her claims because: (1) the agreement was not sufficiently broad to include her claims against Ocwen; (2) Ocwen had waived its right to arbitrate; (3) the origination and servicing of her mortgage loan did not involve interstate commerce;[2] and (4) the agreement itself was unconscionable. The trial court denied Ocwen's motion to compel arbitration, without explanation. Ocwen appealed. See Rule 4(d), Ala. R.App. P.

II. Standard of Review
"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.'" Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala. 2002) (quoting Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999)). Accord, General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 121 (Ala.2003).

III. Analysis

A. Applicability of the Arbitration Agreement

1. Effect of Ocwen's status as an assignee of an assignee
Ocwen contends that it satisfied its burden of establishing that Washington's claims against it are governed by an enforceable arbitration agreement. Washington responds by arguing that the references to the defined terms "you" and "we" in the arbitration agreement restrict the right to arbitrate only to disputes between Washington and Morcap. Washington thus contends that the arbitration agreement does not permit Ocwen to enforce its provisions. Washington argues in her brief that "[t]here is no evidence before this Court, there was no evidence before the trial court, and Ocwen cannot show any evidence that it was an assignee of Morcap." Yet on the same page of her brief Washington also states: "The servicing rights [under the promissory note] were transferred to Aurora Loan Services and then to Ocwen Federal Bank." Washington thus concedes that Ocwen is an assignee of an assignee of Morcap.
As a general rule, an assignee stands in the shoes of the assignor and may enforce an arbitration agreement entered into between the assignor and another party. See Nissan Motor Acceptance Corp. v. Ross, 703 So.2d 324, 326 (Ala. 1997), and authorities cited therein. Washington has not cited any authority, and we are aware of none, that supports the proposition that an assignee of an assignee in a transaction such as this one, *10 which specifically contemplates the existence of assignees, does not stand in the shoes of either the original assignee or, for that matter, the original assignor. We therefore conclude that Ocwen is entitled to assert the rights conferred upon Morcap under the arbitration agreement.

2. Effect of the exception for foreclosure proceedings
The arbitration agreement, as previously noted, provides that certain disputes are not subject to arbitration, including "any judicial or non-judicial foreclosure proceeding . . . whether by the exercise of any power of sale . . . under applicable law." Ocwen contends in its principal brief that nothing in the foregoing language is inconsistent with "the parties' shared right under the Arbitration Agreement to submit a dispute to arbitration `at your option or ours.'" Ocwen then concedes in that brief:
"Washington was free to bring a court action to assert a defense to foreclosurenot the case herejust as Ocwen or Plaintiff were [sic] free to claim their right to arbitration. There is nothing in the Agreement that states the right to bring a court action to assert a defense to foreclosure precludes either party from pursuing their own right to arbitration under the Agreement."
(Emphasis in original.)
Washington responds by stating that the underlying action here is indeed a court action brought to assert a defense to foreclosure. Washington then quotes from her affidavit submitted in opposition to Ocwen's motion to compel arbitration in which she stated that Ocwen threatened to foreclose, that she was afraid she would lose her house, and that everyone in Greensboro knew that her house was being foreclosed upon. As previously noted, Ocwen had commenced publication of its notice of foreclosure in the Greensboro newspaper before the commencement of this action. Washington then asserts that the evidence before the trial court was sufficient to authorize the conclusion that the present action was brought in response to the foreclosure proceedings being brought by Ocwen. Washington then states in her brief: "Ocwen did not and cannot produce any evidence to the contrary."
Ocwen has conceded that Washington was entitled to "bring a court action to assert a defense to foreclosure," which we take to be a correct interpretation of the arbitration agreement for purposes of this proceeding. In its reply brief, Ocwen failed to contradict Washington's assertion that the action was brought "in response to foreclosure proceedings brought by Ocwen." Yet, each of the 12 counts in Washington's complaint seeks "compensatory and punitive damages, court costs, and such other and further relief as this court may deem just and proper." We are obliged to apply the rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (footnote omitted). Absent a claim specifically seeking an injunction against foreclosure, we decline to treat the complaint as falling within the foreclosure exception to arbitration provided for in the arbitration agreement. We therefore reject Washington's attempt to avoid arbitration based upon the contractual exception applicable to foreclosure proceedings.

*11 B. Issues Related to Waiver

1. Who decides whether a party has waived the right to arbitratethe court or the arbitrator?
Washington contends that Ocwen has waived its right to arbitration either by its conduct with reference to a provision in the agreement dealing with the time in which to make demand for arbitration or by its conduct during the course of the litigation. Ocwen contends that whether it has waived its right to arbitration is an issue to be resolved by the arbitrator and not the court.
In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), the United States Supreme Court set forth the following rules that govern the allocation of functions between a court and an arbitrator:
"Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a `question of arbitrability' for a court to decide. See [First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-46 (1995)] (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, e.g., AT & T Technologies[, Inc. v. Communications Workers of America, 475 U.S. 643, 651-52 (1986)] (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241-243 (1962) (holding that a court should decide whether a clause providing for arbitration of various 'grievances' covers claims for damages for breach of a no-strike agreement).
"At the same time the Court has found the phrase `question of arbitrability' not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus `"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide. John Wiley, supra, at 557 (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration). So, too, the presumption is that the arbitrator should decide `allegation[s] of waiver, delay, or a like defense to arbitrability.' Moses H. Cone Memorial Hospital [v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)]. Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to `incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act],' states that an `arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.' RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp.2002). And the comments add that `in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' Id., § 6, comment *12 2, 7 U.L.A., at 13 (emphasis added)."
Before us in this proceeding are issues related to whether the agreement contemplates the arbitrability of claims against Ocwen, and, assuming that it does, whether some or all of the matters made the basis of this action are within the scope of the disputes required by the agreement to be arbitrated. We have previously resolved these issues adversely to Washington, i.e., we have held that Ocwen, as the assignee, is entitled to assert the rights conferred on Morcap, the original assignor, and that the matters made the basis of this action are in the scope of the disputes required to be arbitrated. In the absence of an agreement to the contrary, and we find none here, these matters relate to substantive arbitrability. In disposing of these issues, consistent with Howsam, we treated them as issues going to core issues as to the enforceability of the agreement and therefore appropriate for resolution by the court.
Issues dealing with Ocwen's conduct during the course of the litigation, while arguably classifiable as "procedural arbitrability," involve matters occurring in the judicial forum and are thus best suited for resolution by the court, as opposed to an arbitrator. In Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 12-14 (1st Cir.2005), the United States Court of Appeals for the First Circuit, after noting a conflict within the circuits on this issue, gave the following highly persuasive analysis:
"We start our analysis of whether waiver by conduct in this context is a decision for the court or for the arbitrator by noting that textually under the [Federal Arbitration Act], a court is only permitted to stay a court action pending arbitration if `the applicant for the stay is not in default in proceeding with such arbitration.' 9 U.S.C. § 3 (emphasis added [in Marie]). A `default' has generally been viewed by courts as including a `waiver.' See, e.g., Patten Grading & Paving, Inc. v. Skanska USA Building, Inc., 380 F.3d 200, 204-05 (4th Cir. 2004); Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1316 n. 17 (11th Cir.2002); MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir.2001); County of Middlesex v. Gevyn Constr. Corp., 450 F.2d 53, 56 n. 2 (1st Cir.1971) (only waiver due to the pursuit of legal remedy inconsistent with arbitration is a 'default' under 9 U.S.C. § 3). This language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves. It is true that the same language does not appear in section 4, the section dealing with attempts to compel arbitration, 9 U.S.C. § 4, but the Supreme Court has cautioned us to interpret sections 3 and 4 of the [Federal Arbitration Act] together. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); see also Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 456-57 (2d Cir.1995). At any rate, Allied is moving for a stay of Marie's lawsuit against it under section 3.
"Howsam also relies heavily on the Revised Uniform Arbitration Act of 2000 ('RUAA'). The RUAA, in turn, as quoted by the Howsam Court, establishes that procedural issues are generally for the arbitrator and substantive issues generally for the court. See RUAA § 6, cmt. 2, 7 U.L.A. 14-15 (Supp.2004). Another comment in the same section of the RUAA treats waiver as an issue for the court: `Waiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause.' RUAA § 6, cmt. 5, 7 U.L.A. 16 (Supp.2004).

*13 "As expressed in the commentary to the RUAA and elsewhere, there are important policy reasons why a court and not an arbitrator should decide waiver issues, at least where the waiveras has generally been true in our casesis due to litigation-related activity. Where the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings. See Jones Motor Co. [v. Chauffeurs, Teamsters & Helpers Local Union, 671 F.2d 38, 43 (1st Cir.1982)]; Doctor's Assocs., 66 F.3d at 456 & n. 12.
"Also, the comparative expertise considerations stressed in Howsam and Green Tree [Financial Corp. v. Bazzle, 539 U.S. 444 (2003)] argue for judges to decide this issue. See Howsam, 537 U.S. at 85; Green Tree, 539 U.S. at 452-53. Judges are well-trained to recognize abusive forum shopping. See Tristar [Financial Ins. Agency, Inc. v. Equicredit Corp. of America, 97 Fed.Appx. 462, 464 (5th Cir.2004)]; Bell v. Cendant Corp., 293 F.3d 563, 569 (2d Cir.2002); Jones Motor Co., 671 F.2d at 43. As well, the inquiry heavily implicates `judicial procedures,' which Green Tree suggests should be an important factor in presuming that an issue is for the court. See Green Tree, 539 U.S. at 452-53 (emphasis added). Further, the procedural waiver issue is not likely to be intertwined with the merits of the dispute. See RUAA § 6 cmt. 5, 7 U.L.A. 16 (Supp.2004); see also [John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-58 (1964)]; Prima Paint Corp., 388 U.S. at 403-04.
"Finally, sending waiver claims to the arbitrator would be exceptionally inefficient. A waiver defense is raised by one party to a lawsuit in response to another party's motion to compel arbitration or stay judicial proceedings on the basis of an arbitration agreement signed by the parties. If the arbitrator were to find that the defendant had waived its right to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims. The case would have bounced back and forth between tribunals without making any progress. See 2 I.R. Macneil et al., Federal Arbitration Law § 21.3 (1994); RUAA § 6 cmt. 5, 7 U.L.A. 16 (Supp.2004).
"This is different in kind from the arbitrator's normal resolution of a gateway issue: normally, the resolution of such an issue would bar not only arbitration but any sort of litigation on the issues by either side. Thus, allowing courts to decide waiver issuesat least when due to litigation-related activity furthers a key purpose of the [Federal Arbitration Act]: to permit speedy resolution of disputes. See, e.g., Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-20 (1985); Moses H. Cone Mem'l Hosp., 460 U.S. at 22-23; see also Menorah Ins. Co. [v. INX Reinsurance Corp., 72 F.3d 218, 222 (1st Cir.1995)] (observing in context of international, non-FAA arbitration case that `[a]rbitration clauses were not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process'). Moreover, the Howsam and Green Tree rules exist partly `to avoid . . . delay.' Shaw's Supermarkets, Inc. [v. United Food & Commercial Workers Union, 321 F.3d 251, 255 (1st Cir.2003)]. We hold that the Supreme Court in Howsam and Green Tree did not intend to disturb the traditional rule that waiver by conduct, at least where due to *14 litigation-related activity, is presumptively an issue for the court."
(Final emphasis added; footnote omitted.) We agree with the conclusion reached by the First Circuit Court of Appeals in Marie; we therefore hold that the issue whether a party has waived the right to arbitration by its conduct during litigation is a question for the court and not the arbitrator.

2. Did Ocwen's litigation conduct constitute a waiver?
Washington contends that Ocwen's conduct during the litigation before it filed its motion to compel arbitration constituted a waiver by Ocwen of its right to arbitrate. In order to show waiver by litigation-related conduct, the party opposing arbitration must demonstrate that the movant has substantially invoked the litigation process and thereby the opposing party would be substantially prejudiced if the case were submitted to arbitration. Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). In Moses H. Cone Memorial Hospital, supra, the United States Supreme Court recognized a strong federal policy favoring arbitration:
"The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
460 U.S. at 24-25, 103 S.Ct. 927 (emphasis added; footnote omitted). In order to establish waiver, the party opposing arbitration bears a heavy burden, and waiver is not lightly to be inferred. Thompson v. Skipper Real Estate Co., 729 So.2d 287, 292 (Ala.1999), and cases cited therein. Before filing its motion to compel arbitration, Ocwen, on September 27, 2004, removed the action to the United States District Court for the Southern District of Alabama and filed an answer in that court at the time of removal. The answer did not assert Ocwen's right to arbitration. Ocwen requested that the action be transferred to a pending multidistrict litigation in the United States District Court for the Northern District of Illinois. Ocwen thereafter filed in the federal court in Alabama a motion to stay the proceedings pending a decision from the Judicial Panel on Multidistrict Litigation. Washington filed an opposition to the motion for a stay. The Judicial Panel on Multidistrict Litigation then entered a conditional transfer order transferring the action to the federal court in Illinois. The transfer order provided that it would not become effective until it had been filed in that federal court and that the transmittal of the order would be stayed for 15 days from its entry, with the stay continued until further order of the panel if any party opposed the transfer. Washington filed in the federal court in Alabama a brief opposing the transfer and a motion to remand the action to the state court. Ocwen filed in the federal court in Alabama responses to Washington's opposition to the motion to stay, opposition to the motion to transfer, and motion to remand. The federal court in Alabama initially denied Washington's motion to remand. Washington then filed a motion to reconsider, which was granted, and the court entered an order remanding the action to the state court. However, on the day of the federal court's order remanding the action to the state court, Ocwen obtained leave to file a brief in opposition to the motion to reconsider, thereby apparently suspending the operation of the remand order. Ocwen thereafter filed a response to Washington's motion to reconsider, and Washington filed a *15 reply to Ocwen's response. The federal court in Alabama ultimately remanded the action to the state court on January 19, 2005, several days after its initial order granting Washington's motion for reconsideration and remanding the action. Ocwen filed its motion to compel arbitration over two months later on March 23, 2005.
In Ex parte Hood, 712 So.2d 341 (Ala. 1998), the defendant removed an action to the federal court. Four months later, while the action was still pending in the federal court, the defendant advised the plaintiff through correspondence that it was invoking its rights under an arbitration agreement. Shortly thereafter, in its answer to the complaint, the defendant asserted its right to arbitration. This Court stated:
"We might assume that if Golden [the defendant] had immediately followed . . . its removal with service of its answer pleading an arbitration defense, such action would have been sufficient to put Hood [the plaintiff] on notice that Golden still intended in the federal court to reserve its right to seek arbitration. Cf. Terminix Int'l Co. v. Jackson, 669 So.2d 893, 896 (Ala.1995) (holding that the plaintiff did not establish a waiver where the defendant's answer had put the plaintiff on notice of an arbitration defense). Filing an answer at such a time might have indicated that Golden intended to pursue arbitration instead of a federal judicial remedy, and it would have given Hood the opportunity to avoid spending the resources necessary to have the case remanded to the state court for a trial. As it was, Golden removed the case to the federal court and proceeded as if it was preparing for a judicial resolution of Hood's claim."
712 So.2d at 346 (emphasis added). The defendant in Hood also agreed to a discovery schedule to govern the litigation in the federal court and agreed to a date for trial. Ocwen, however, did not participate in a discovery plan while the proceeding was in the federal court and, upon remand, although Ocwen responded to Washington's request for production, it did not initiate any discovery from Washington.
The dissenting opinion in Hood pointed out that the defendant there argued in its brief that "it removed the case to the federal court because federal courts look more favorably on arbitration agreements than do the courts of this state." 712 So.2d at 347. Here, Ocwen advances no such reason for its removal of the action to the federal court. Ocwen counters the delay resulting from the foregoing events by pointing out that the litigation in the federal court was stayed for two months, that Ocwen was ignorant of its right to arbitrate, and that it should not be faulted for such ignorance because Washington failed to attach copies of her contract documents to her complaint. Of course, the stay was the result of a motion filed by Ocwen, not Washington, the purpose of which was to permit Ocwen to pursue its defense in a judicial forum in the federal court in Illinois.
Nothing in the record before us indicates that the proceedings in the United States District Court for the Northern District of Illinois, had they been allowed to go forward, would have been in an arbitral, rather than a judicial, forum. Indeed, to the contrary, 28 U.S.C. § 1407(a) provides that "civil actions involving one or more common questions of fact . . . pending in different districts . . . may be transferred to any district for coordinated or consolidated pretrial proceedings." (Emphasis added.) A party to an arbitration agreement is not entitled to pretrial *16 proceedings except to the extent that the phrase "pretrial proceedings" can be expansively read as embracing a motion to compel arbitration, somewhat of a contradiction in terms, because the word "pretrial" in the traditional sense contemplates steps in anticipation of a trial, an event not available in arbitration.[3] Title 28, § 1407(a), further provides for remand to the transferor forum for an adjudication on the merits after the conclusion of the pretrial proceedings. Such forum shopping, absent any indication of an intent to pursue arbitration in the transferee forum, is not merely driven by a desire to secure a venue favorable to arbitration. Compare Thompson v. Skipper Real Estate Co., 729 So.2d at 292 ("Merely moving to transfer an action to the proper venue and propounding one set of interrogatories with that motion is not such substantial involvement in the litigation process as to constitute a waiver of the right to compel arbitration, unlike the removal of a state action to a Federal court and an attempt to litigate that action in that Federal forum." (emphasis added)).
Ocwen, not Washington, bears the primary responsibility for familiarizing itself with its rights under an agreement to which it is an assignee. As previously noted, we are not moved by Ocwen's criticism of Washington for her failure to attach a copy of the contract documents to the complaint. The record is devoid of any evidentiary basis for Ocwen's failure to assert its right to arbitrate when it filed its answer in the federal court. For purposes of this proceeding, it must therefore be assumed that Ocwen learned of its right to arbitrate soon after the commencement of this action. Had Ocwen seasonably invoked its right to arbitrate when it served its answer in the federal proceeding in Alabama in September 2004, instead of waiting until March 2005, two months after the federal court remanded the case to the state court, it would have given Washington the option of avoiding the incurrence of the costs attendant to the various rounds of motions and briefs filed in connection with the remand of this proceeding to the state court for what Washington had the *17 right to conclude would be a trial in a judicial, rather than an arbitral, forum. As was true in Hood, "[f]iling an answer [pleading an arbitration defense] at such a time [removal] might have indicated that [Ocwen] intended to pursue arbitration instead of a federal judicial remedy, and it would have given [Washington] the opportunity to avoid spending the resources necessary to have the case remanded to the state court for a trial." 712 So.2d at 346. That Washington has been prejudiced by the necessity of expending resources in connection with the various rounds of motions and briefs in the federal courts in both Alabama and Illinois over a period of almost four months cannot realistically be disputed. Washington was misled into thinking that successful opposition to the federal proceedings would leave the resolution of her dispute in the state court.
But for Ocwen's failure to involve itself in discovery for its benefit as did the defendant in Hood, the two cases would be virtually indistinguishable. Should this distinction make a difference? We think not, given the substantial activity in the federal court, during which Ocwen fought diligently to secure to itself a forum antithetical to arbitration, followed by its initial demand for arbitration only after its exhaustive efforts to avoid the state court had been unsuccessful. Indeed, Ocwen contended in support of its motion filed in the federal district court to stay proceedings in Alabama:
"[S]ince there is no reason this Court should waste its resources engaging in efforts that are more likely to be duplicated by the transferee court, a stay would promote judicial economy. A stay would also permit an orderly discovery process among all related actions thereby eliminating the possibility of duplicative discovery proceedings, and preventing the possibility of inconsistent rulings on pretrial summary judgment, class certification, and other motions. Finally, a stay would prevent Ocwen from being prejudiced by having to simultaneously litigate the same claims in different courts."
We emphasize that Ocwen did not mention the prospect for demanding arbitration as part of the contemplated pretrial proceedings in this or any of the other cases Ocwen sought to have consolidated for federal multidistrict litigation. Ocwen's statement quoted above, which was in the record before the trial court when it denied Ocwen's motion to compel arbitration, unequivocally displays an intent on Ocwen's part to litigate, not arbitrate, and distinguishes this case from the cases relied upon by the dissenting opinion as illustrative of instances in which arbitration has been ordered in cases involving multidistrict litigation pursuant to 28 U.S.C. § 1407. See note 3, supra.
We deem Ocwen's efforts, especially in light of its pursuit of the nonarbitral forum of consolidated pretrial proceedings in multidistrict litigation, to constitute substantial invocation of the litigation process and thus a waiver of its right to arbitration.

IV. Conclusion
Based on our finding that Ocwen waived its right to arbitration by its conduct in this litigation, we affirm the trial court's order denying arbitration. Because we are affirming the trial court's order based on the waiver issue, we pretermit consideration of Washington's defenses of unconscionability and waiver based upon the alleged untimeliness of Ocwen's demand for arbitration under the terms of the agreement, including the threshold question of who decides the timeliness issue, the court or the arbitrator.
AFFIRMED.
*18 NABERS, C.J., and HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SEE, J., concurs in part and dissents in part as to the rationale and dissents from the judgment.
SEE, Justice (concurring in part and dissenting in part as to the rationale and dissenting from the judgment).
I concur in Part III.A. and Part III.B.1. of the main opinion, but I dissent from Part III.B.2. and therefore from the judgment.
As the main opinion notes, where there is doubt as to whether a party has waived its right to arbitration, that doubt should be resolved in favor of arbitration, and there is a "heavy burden" on the party asserting waiver. Because "arbitration is a matter of contract," United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), this Court applies ordinary state-law principles concerning contracts when construing the rights and defenses associated with an arbitration agreement. See AmSouth Bank v. Dees, 847 So.2d 923, 933 (Ala.2002). Washington argues  and the main opinion agrees that Ocwen has waived its right to arbitration by pursuing the judicial process.
"Waiver is generally defined as the intentional relinquishment of a known right." Bell v. Birmingham Broadcasting Co., 263 Ala. 355, 357, 82 So.2d 345, 347 (1955). Thus, "[w]hether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process. . . ." Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). In Bell, we noted:
"While it is to be conceded that intent necessary to constitute waiver may be implied from the act of the party involved, the inquiry still is what was the intent of the party as manifested by his actions."
263 Ala. at 357, 82 So.2d at 347.
"`[T]o make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose.'" Bell v. Birmingham Broad. Co., 266 Ala. 266, 269, 96 So.2d 263, 265 (1957) (quoting 56 Am.Jur. Waiver § 17, p. 18). Washington's burden to show that Ocwen waived its right to arbitration is a heavy one. "`[T]here is a presumption against a court's finding that a party has waived the right to compel arbitration.'" Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1028 (Ala.2000) (quoting Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102, 103 (Ala.1997)). A party seeking to prove a waiver of a right to arbitrate carries a heavy burden, and the courts will not lightly infer a waiver of the right to arbitration. Lee, 784 So.2d at 1028-29 (citing Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998)).
Washington relies on four actions by Ocwen to demonstrate that Ocwen has waived its right to arbitrate:
(1) the more-than-six-month delay between Washington's filing of the action and Ocwen's moving to compel arbitration;
(2) Ocwen's removal of Washington's action to the federal court;
(3) Ocwen's decision to answer Washington's complaint without asserting its right to arbitrate; and
(4) Ocwen's request that Washington's action be transferred to a federal court handling pending multidistrict litigation and its corresponding request that the federal district court in Alabama stay all proceedings *19 pending the decision of the multidistrict litigation panel.
This Court has previously deemed insufficient each of the first three actions Washington relies upon to demonstrate Ocwen's intent to pursue the judicial process. First, we have previously held that a delay of more than one year is insufficient evidence of an intent to forgo the right to arbitration. See, e.g., Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986) (declining to find a waiver even though more than a year had elapsed between the filing of the complaint and the request for arbitration). Second, we have held that the removal of a state action to the federal court does not demonstrate an intent to waive the right to arbitrate. Merrill Lynch, 494 So.2d at 4. Finally, in Thompson v. Skipper Real Estate Co., 729 So.2d 287 (Ala.1999), we adopted the reasoning in Mutual Assurance, Inc. v. Washington, supra, that "`"`"the service of an answer in an action on the contract does not constitute a waiver of the right to arbitration, even though the answer does not set up the arbitration clause as a defense."'"'" 729 So.2d at 291 (quoting Companion Life Ins. Co. v. Whitesell Mfg., 670 So.2d at 899, quoting in turn other authorities).
Because each of the first three activities Washington relies upon to demonstrate waiver has previously been deemed insufficient evidence of an intent to forgo arbitration,[4] the conclusion that Ocwen has waived its right to arbitration hinges on the fourth activity, namely, Ocwen's request that Washington's action be transferred for consolidated pretrial proceedings to a federal court in Illinois where multidistrict litigation under 28 U.S.C. § 1407 was pending.
The term "pretrial proceedings," as used in 28 U.S.C. § 1407, gives a transferee court jurisdiction over all proceedings that occur before trial:
"[T]o determine the jurisdiction and power of the transferee court it is essential to define exactly what is encompassed by the words `pretrial proceedings.' Interpreted literally, the transferee court appears to have control over all proceedings prior to trial."
15 Charles Alan Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3866 (2d ed.1986) (footnote omitted). Thus, a transferee court has the authority to rule on all pretrial motions.[5]In re Eli Lilly & Co., Prozac Prods. Liability Litigation, 789 F.Supp. 1448 (S.D.Ind.1992). A motion to *20 compel arbitration is a pretrial motion; any hearing conducted on a motion to compel arbitration is a pretrial proceeding. Thus, the transferee court has the power to grant a request to compel arbitration as part of its general jurisdiction to decide all pretrial matters. Although a party that intends to arbitrate a dispute is not entitled to the full panoply of pretrial proceedings, and an effort to avail itself of many of those proceedings clearly is inconsistent with an intent to arbitrate, Ocwen was entitled to certain "pretrial proceedings." Therefore, a request for multidistrict litigation is not necessarily inconsistent with an intent to arbitrate rather than to litigate. In fact, there are a number of cases in which a party has moved to compel arbitration after requesting that a case be consolidated with pending multidistrict litigation. See, e.g., In re Universal Serv. Fund Telephone Billing Practices Litig., 320 F.Supp.2d 1135 (D.Kan.2004); Ex parte Merrill Lynch, Pierce, Fenner, & Smith, Inc., 494 So.2d 1 (Ala.1986).[6] The burden is on Washington to prove that Ocwen intended to litigate, and not on Ocwen to prove the absence of such an intent.
Although a request for a transfer to a forum where multidistrict litigation is pending is not necessarily an act inconsistent with the right to arbitrate, the main opinion notes:
"Indeed, Ocwen contended in support of its motion filed in the federal district court to stay proceedings in Alabama:
"`[S]ince there is no reason this Court should waste its resources engaging in efforts that are more likely to be duplicated by the transferee court, a stay would promote judicial economy. A stay would also permit an orderly discovery process among all related actions thereby eliminating the possibility of duplicative discovery proceedings, and preventing the possibility of inconsistent rulings on pretrial summary judgment, class certification, and other motions. Finally, a stay would prevent Ocwen from being prejudiced by having to simultaneously litigate the same claims in different courts.'"[7] *21 939 So.2d at 17. Ocwen's argument to the federal district court clearly implies that it was Ocwen's intention to "litigate the same claims." This is evidence indicating that Ocwen intended to litigate, and it makes this case a close one; nonetheless, I cannot agree that Washington met her heavy burden of demonstrating the "clear, unequivocal, and decisive act of the party showing such a purpose [to waive its right to arbitrate]" that is necessary to establish a waiver. I, therefore, respectfully dissent from Part III.B.2. of the main opinion and from the judgment.
NOTES
[1] Washington stated in her response to Ocwen's motion to compel arbitration that she did not name Morcap as a defendant because it had filed for bankruptcy protection and her claims against Morcap have likely been discharged in bankruptcy.
[2] Before this Court Washington does not challenge the applicability of the Federal Arbitration Act (9 U.S.C. § 1 et seq.).
[3] The dissenting opinion observes that "a request for multidistrict litigation is not necessarily inconsistent with an intent to arbitrate rather than to litigate." 939 So.2d at 20 (emphasis added). It uses two cases, neither of which is analogous to this proceeding, to illustrate this proposition. The first case is In re Universal Service Fund Telephone Billing Practices Litigation, 320 F.Supp.2d 1135 (D.Kan.2004), in which no argument was made in opposition to the motion to compel arbitration that the motion to transfer for consolidated pretrial proceedings evidenced any intent inconsistent with arbitration. For all that appears, nothing in the motion or supporting materials bespoke an intent to abandon any right to arbitrate. Moreover, the transferee court subsequently found a waiver of the right to arbitrate one aspect of the claim based on the delay in asserting the right to arbitrate. 320 F.Supp.2d at 1141. The second case cited is Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala. 1986), where federal multidistrict litigation pursuant to 28 U.S.C. § 1407 was pending, yet the proceeding in the Alabama court in which arbitration was ordered was never a part of that proceeding. Because it appears that the state action was not removable, 28 U.S.C. § 1407 was not even applicable to the Alabama action. BancOhio Corp. v. Fox, 516 F.2d 29, 32 (6th Cir.1975) ("there is nothing in the applicable statute [28 U.S.C. § 1407] to provide an exception to the rules normally governing removal of cases from state courts"). The defendant in Merrill Lynch requested only that the Alabama action be stayed until the plaintiff decided whether she wished to participate in the federal classaction litigation or to opt out of that litigation and pursue her claim individually. Once the plaintiff opted out of the federal litigation, the defendant seasonably moved to compel arbitration. Neither case cited by the dissent involves conduct of the movant comparable to the conduct presented by the facts before us in this proceeding.
[4] See, e.g., Walker v. J.C. Bradford & Co., 938 F.2d 575 (5th Cir.1991) (holding that J.C. Bradford & Co. did not waive its right to arbitration even though it removed the action to the federal court, answered without asserting its right to arbitration, and first sought arbitration 13 months after the complaint was filed). See also Ex parte Hood, 712 So.2d 341 (Ala. 1998) ("In Ex parte Merrill Lynch[, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986)], this Court held that the defendants had not substantially invoked the litigation process and had therefore not waived the right to seek arbitration, despite the fact that the defendants had . . . filed a motion to stay proceeding to await the outcome of pending federal multidistrict class action litigation. . . . ").
[5] "The statute authorizing transfer (and consolidation) of multidistrict actions, 28 U.S.C. § 1407, is a venue statute that allows the [Judicial Panel for Multidistrict Litigation] to override a plaintiff's choice of forum when three factors are present. . . ." Pinney v. Nokia, Inc., 402 F.3d 430, 452 (4th Cir.2005). As the main opinion notes, "`[m]erely moving to transfer an action to the proper venue and propounding one set of interrogatories with that motion is not such substantial involvement in the litigation process as to constitute a waiver of the right to compel arbitration. . . .'" 939 So.2d at 16 (quoting Thompson v. Skipper Real Estate Co., 729 So.2d at 292).
[6] I do not suggest that these cases are analogous to the case before us; I cite them only to illustrate the point that parties do go to a multidistrict-litigation forum and subsequently seek to arbitrate. See also, e.g., In re Prudential Insurance Co. of America Sales Practices Litigation, 924 F.Supp. 627 (D.N.J.1996), where it was argued that, even if Prudential had a right to arbitrate the defendants' claims against it, it waived that right when it moved for a transfer to a federal court hearing pending multidistrict litigation for pretrial proceedings. The federal district court denied Prudential's motion to compel arbitration without addressing the waiver argument; however, the court noted that the "parties should rest assured . . . that the Court has considered [it]." 924 F.Supp. at 634 n. 10. The United States Court of Appeals for the Third Circuit reversed the district court's denial of Prudential's motion to compel arbitration, also without specifically addressing the issue of waiver, but presumably having rejected it. In re Prudential Ins. Co. of America Sales Practice Litig. All Agent Actions, 133 F.3d 225 (3d Cir.1998). See also Popovich v. McDonald's Corp., 189 F.Supp.2d 772, 774 (N.D.Ill.2002), where McDonald's moved to compel arbitration after moving for a transfer to a federal court hearing multidistrict litigation. The court did not address whether McDonald's had waived the right to arbitrate by moving for a transfer; however, the court did hold that McDonald's had not waived the right to arbitrate by moving for an injunction after having moved for a transfer and before having moved to arbitrate. The court ultimately denied the motion to compel arbitration filed by McDonald's, based on its finding that arbitration in that case was cost prohibitive. 189 F.Supp.2d 772.
[7] I recognize that this language appears nowhere in the briefs of the parties and is not referenced by them; however, this Court can affirm a judgment of a trial court for any reason, Taylor v. Stevenson, 820 So.2d 810, 814 (Ala.2001), even where the ground upon which it affirms was not argued before the trial court or this Court. Ex parte CTB, Inc., 782 So.2d 188, 191 (Ala.2000).