STUART, Chief Justice.
Candy Parkhurst ("Parkhurst"), personal representative of the estate of her husband, Andrew P. Parkhurst ("Andrew"), deceased, initiated an action in the Lauderdale Circuit Court for the purpose of compelling Carter C. Norvell and Parkhurst & Norvell, an accounting firm Norvell had operated as a partnership with Andrew ("the partnership"), to arbitrate a dispute regarding the dissolution of the partnership. Pursuant to an arbitration provision in a dissolution agreement Norvell and Andrew had executed before Andrew's death, the trial court ultimately ordered arbitration and stayed further proceedings until arbitration was complete. Subsequently, however, Parkhurst moved the trial court to lift the stay and to enter a partial summary judgment resolving certain aspects of the dispute in her favor. After the trial court lifted the stay and scheduled a hearing on Parkhurst's motion, Norvell and the partnership filed the instant appeal, arguing that the trial court was effectively failing to enforce the terms of a valid arbitration agreement in violation of the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq. We reverse and remand.
I.
Andrew and Norvell, both certified public accountants, began practicing together in 1993. In October 1995, they executed a partnership agreement formally creating the entity known as Parkhurst & Norvell. For all that appears, they worked together in harmony until approximately March 2010, when Norvell alleges that he discovered Andrew had been using partnership funds for personal expenses. Norvell asserts that Andrew, upon being confronted, acknowledged that he had been misusing partnership funds for many years but stated that he would take corrective measures that included modifying the amounts in their respective capital accounts. Although Andrew apparently did make some subsequent adjustments to their capital accounts, Norvell claims that Andrew made no adjustments to account for his misuse of partnership funds in the years before 2010.
On June 14, 2011, Andrew and Norvell executed a dissolution agreement setting forth the framework for dissolving the partnership effective June 30, 2011. Under the terms of that agreement, Andrew *302 agreed to retire from public accounting and to encourage his clients to henceforth use Norvell's services; in return, Norvell agreed to pay Andrew a percentage of billings collected from those clients monthly over the next five years. The agreement also provided that Norvell would make a final reconciliation of their capital accounts in the partnership and remit to Andrew any sum Andrew was due, along with $150,000 representing Andrew's equity in the partnership's office building, within 30 days of "the closing of the books." Finally, paragraph 1 of the dissolution agreement contained the following arbitration provision:
"The partners agree to dissolve the partnership effective June 30, 2011, in accordance with section 12 of the partnership agreement. [Norvell] will act in the capacity of liquidating partner. [Norvell] will make a determination of the reconciliation of the capital accounts. [Norvell] shall provide a final, detailed reconciliation and supporting documentation to [Andrew]. In the event there is a dispute with regard to reconciliation of the capital accounts, the parties agree to resolve the dispute by binding arbitration. For purposes hereof, the parties shall select a mutually agreeable CPA or attorney to serve as the arbitrator, who shall then review the records of the business, make inquiry of the parties as to any transactions that are disputed, and, if (s)he deems necessary, conduct a hearing of the matter with the parties in attendance. At any such hearing, the parties may bring legal or other representation. Upon conclusion of the review of records and/or hearing, the arbitrator shall make a written report effectively reconciling the capital accounts and the parties agree to be legally and forever bound thereby."
Paragraph 12 of the dissolution agreement further provided:
"The parties agree to reasonably cooperate with each other as to any matters arising out of the dissolution of the partnership, including, but not limited to, reconciliation of capital accounts, matters relating to tax returns and any tax audits and related appeals, claims or litigation, and in the winding up of the partnership business affairs. Further, [Andrew] or his representatives, upon reasonable request at such times and in such manner as is mutually agreeable to [Norvell], shall be permitted full access to examine the books of [Norvell] relative to [Andrew's] clients and the payments made to Andrew pursuant to section 4 hereof. In the event of any disputes that cannot be resolved by the parties, the arbitration process (including the named arbitrator or alternative arbitrator approved by both parties) shall govern."
Parkhurst asserts that Andrew complied with his obligations under the terms of the dissolution agreement and that he encouraged his former clients to use Norvell as their accountant.[1] In return, Norvell initially made the required monthly payments to Andrew; however, at some point-it is not clear from the record exactly when-he stopped making those payments. On October 12, 2012, Norvell delivered to Andrew the final reconciliation of the partners' capital accounts he was obligated by the dissolution agreement to produce. After reviewing the partnership's business records going back to 1993 and making adjustments for transactions performed by Andrew that Norvell now *303 deemed to be illegitimate, Norvell concluded that Andrew's capital account had a negative balance of $3,406,622. Andrew died on January 11, 2013, and, on August 14, 2013, Norvell filed a claim against Andrew's estate for $4,149,655, based on that negative balance and other expenses Andrew allegedly owed the partnership.
It appears that, at some point in time, Norvell also initiated a lawsuit against Deborah Henderson Smith, who appears to have had some business involvement with Norvell, Andrew, and/or the partnership related to the estate of a deceased relative. The record in this case does not disclose the facts underlying that lawsuit; however, it appears that Andrew's estate eventually became involved and asserted cross-claims against Norvell, eventually moving the trial court to compel arbitration of those cross-claims pursuant to the arbitration provision in the dissolution agreement. Subsequently, however, Norvell argued that those cross-claims were not related to the Deborah Henderson Smith action and should be resolved in a separate proceeding; Parkhurst eventually agreed and withdrew her motion to compel arbitration, notifying the trial court that she would initiate a separate action instead.
On September 22, 2014, Parkhurst initiated that new action, alleging (1) that Norvell had made invalid and illegitimate adjustments to Andrew's capital account and (2) that Norvell had failed to make the monthly payments required by the dissolution agreement. Parkhurst simultaneously requested that the trial court compel arbitration of the dispute pursuant to the terms of the dissolution agreement. Norvell initially opposed that request and Parkhurst's subsequent formal motion to compel arbitration, questioning whether the dispute involved interstate commerce and arguing that neither Parkhurst nor the partnership was a party to the dissolution agreement; on March 16, 2015, the trial court granted Parkhurst's motion to compel arbitration and stayed the action "until the arbitration is completed and an award is entered."[2]
On August 17, 2015, Parkhurst initiated arbitration proceedings by filing a statement of claim with the arbitrator, requesting that he
"enter an order disallowing the capital account adjustments made by Norvell, properly reconcile the capital accounts, award to [Parkhurst] the balance due of [Andrew's] capital account, award to [Parkhurst] the amount past due on the monthly payments required [by the dissolution agreement], order that monthly payments in the future are due to be made by Norvell, and award [Parkhurst] all recoverable interest, legal fees and costs of this proceeding."
The parties thereafter engaged in limited discovery as authorized by the arbitrator. On November 21, 2016, Parkhurst filed a "motion for partial summary judgment" with the arbitrator, requesting him to hold that Norvell was bound by the partnership's 2010 tax return, which indicated that Andrew's capital account had a balance of $135,170 as of October 2011. Parkhurst argued that Norvell had completed and submitted this tax return under penalty of perjury after the dissolution agreement had been executed and with knowledge of Andrew's alleged misuse of partnership funds and that it would accordingly be inappropriate to allow him to subsequently conduct another reconciliation going back *304 all the way to 1993. In support of her arguments, Parkhurst cited the statutes of limitations applicable to breach-of-fiduciary-duty and contract claims, and the doctrines of waiver, estoppel, ratification, acquiescence, and delay in disaffirmance. In the alternative, Parkhurst argued that Norvell should be bound by the partnership's 2011 tax return, which was completed and submitted by Norvell in October 2012 and covered the period through the June 2011 dissolution of the partnership. This 2011 tax return indicated that the balance in Andrew's capital account at that time was $0. Essentially, Parkhurst desired the arbitrator to enter the equivalent of an interlocutory order holding that the final reconciliation of the partners' capital accounts could not take into account any misuse of partnership funds by Andrew that occurred before 2010.
On November 22, 2016, Norvell wrote the arbitrator expressing his position that in her motion Parkhurst was effectively asking the arbitrator to exceed his authority. The governing arbitration provision, Norvell argued, empowered the arbitrator only to "review the records of the business, make inquiry of the parties as to any transactions that are disputed, and, if (s)he deems necessary, conduct a hearing of the matter .... Upon conclusion of the review of records and/or hearing, the arbitrator shall make a written report effectively reconciling the capital accounts." Norvell further emphasized that the arbitration provision did not even require an attorney to fulfill this role; it contemplated a certified public accountant serving as the arbitrator if the parties agreed. On December 19, 2016, Norvell supplemented his November 22 letter with a memorandum further arguing that "neither the FAA nor the executed [dissolution agreement] provide the arbitrator with authority to grant dispositive motions."[3]
On or around December 20, 2016, the arbitrator conducted a telephone conference call with the parties. There is no transcript of this call in the record, and the parties' descriptions of this call differ substantially. In a subsequent filing made in the trial court, Parkhurst states:
"In that conference call, it was discussed and agreed with [the arbitrator] that this motion for partial summary judgment would be submitted to the circuit court given [Norvell's] position that the circuit court is where these issues must be decided. No mention was made then by [Norvell] that this court could not or should not hear these issues. It was voiced by all participants that a hearing in court would provide appellate rights and therefore be positive in that respect."
However, in his own filing to the trial court, Norvell disputes that he or the arbitrator agreed that Parkhurst should file her motion seeking a partial summary judgment in the trial court:
"[Parkhurst] only filed her motion for partial summary judgment in this court after filing the almost identical motion with [the arbitrator] and after [the arbitrator] stated that he would not grant the motion but rather wanted to have a full hearing. In that regard, [Norvell] has never agreed for the circuit court to hear [Parkhurst's] motion for partial summary judgment. After [the arbitrator] stated that he would not rule on the motion because he wanted a full hearing due to the lack of appeal rights in arbitration, [Parkhurst's] counsel stated that he would file his motion in circuit court from which [Norvell] would have an appeal.
*305 However, counsel for [Norvell] made no comment in response to that statement."
On December 21, 2016, Parkhurst filed a motion for a partial summary judgment in the trial court, making the same arguments she had made in her November 21 motion filed with the arbitrator and further representing that "[Norvell] has taken the position that the arbitrator does not have authority to decide the issues presented in the plaintiff's motion for partial summary judgment, but has instead asserted that those issues should be presented to the circuit court."
On February 6, 2017, Norvell and the partnership moved the trial court to stay or dismiss Parkhurst's motion for a partial summary judgment because of the pending arbitration proceeding, asserting that Parkhurst had filed her motion in the trial court only because the arbitrator had effectively rejected it by indicating that he wanted to hear the entire case. On March 24, 2017, the trial court denied Norvell and the partnership's motion and lifted the stay it had previously entered in the case when arbitration was first ordered so that it could consider Parkhurst's motion for a partial summary judgment. On May 5, 2017, Norvell and the partnership filed a notice of appeal to this Court.[4]
II.
Norvell and the partnership argue that the trial court's March 24 order lifting the stay in this case is the equivalent of an order refusing to compel arbitration that is appealable pursuant to Rule 4(d), Ala. R. App. P. We agree. This Court has held that a direct appeal is the proper vehicle by which to challenge a trial court's refusal to stay matters pending arbitration, and we have stated that we will review such decisions under a de novo standard of review. See Johnson v. Jefferson Cty. Racing Ass'n, 1 So.3d 960, 968 n. 10 (Ala. 2008), Liberty Nat'l Life Ins. Co. v. Douglas, 826 So.2d 806, 809 (Ala. 2002) ("We review de novo a trial court's denial of a motion to stay pending arbitration."), and Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1025 (Ala. 2000) ("A trial court's denial of a motion to stay proceedings pending arbitration is reviewable by direct appeal. ... Our review of that decision is de novo."). See also Bear Bros., Inc. v. ETC Lake Dev., LLC, 121 So.3d 334, 337 (Ala. 2013) (Moore, C.J., concurring specially) ("[T]his Court has considered a motion to stay proceedings pending arbitration as implicitly encompassed within the right of appeal provided in Rule 4(d)."). Accordingly, we review de novo the trial court's March 24 order lifting the stay in this case.
III.
It is undisputed that an arbitration agreement encompassing the underlying dispute between Norvell and the partnership, on the one hand, and Parkhurst, on the other, exists; both Norvell and Parkhurst acknowledge that fact. Accordingly, the burden is upon Parkhurst-the party seeking to have some element of that dispute decided by the trial court instead of the arbitrator-to establish that the arbitration agreement should not be enforced. See, e.g., Alabama Title Loans, Inc. v. White, 80 So.3d 887, 891 (Ala. 2011) (generally explaining the shifting burdens that apply when a party seeks to enforce-or avoid-an arbitration agreement). Parkhurst has advanced several legal arguments *306 for removing her dispute with Norvell and the partnership from arbitration-including waiver, default, estoppel, acquiescence, and the "mend-the-hold" doctrine;[5] all these arguments, however, are essentially based on the same underlying argument that Norvell and the partnership, by Norvell's actions, have lost the right to now enforce the arbitration provision in the dissolution agreement. This is essentially an argument that Norvell has waived his right to arbitration. We have considered similar arguments on multiple occasions and repeatedly emphasized that such a waiver is not easily established. In Zedot Construction, Inc. v. Red Sullivan's Conditioned Air Services, Inc., 947 So.2d 396, 399 (Ala. 2006), this Court explained:
" 'In Moses H. Cone Memorial Hospital [v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ], the United States Supreme Court recognized a strong federal policy favoring arbitration:
" ' "The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
" ' 460 U.S. at 24-25 (... footnote omitted). In order to establish waiver, the party opposing arbitration bears a heavy burden, and waiver is not lightly to be inferred. Thompson v. Skipper Real Estate Co., 729 So.2d 287, 292 (Ala. 1999), and cases cited therein.'
" Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala. 2006). '[A] presumption exists against a finding that a party has waived the right to compel arbitration.' Conseco Fin. Corp.-Alabama v. Salter, 846 So.2d 1077, 1080 (Ala. 2002)."
See also Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 18 (Ala. 2006) (See, J., concurring in part and dissenting in part) (" ' "[T]o make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose." ' " (quoting Bell v. Birmingham Broad. Co., 266 Ala. 266, 269, 96 So.2d 263, 265 (1957), quoting in turn 56 Am.Jur. Waiver § 17, p. 18)).
Parkhurst argues that Norvell and the partnership have waived their right to enforce the arbitration agreement in this case by taking the position that the arbitrator lacked the authority to rule on the partial summary-judgment motion filed by Parkhurst in the arbitral forum. By taking this position, Parkhurst argues, Norvell clearly and unequivocally demonstrated an intent for the trial court to decide the issues raised in that motion. We disagree. The documentary evidence in the record indicates that, after Parkhurst moved the arbitrator to enter a partial summary judgment in her favor, Norvell argued to the arbitrator that "neither the FAA nor the executed [dissolution agreement] provide[d] the arbitrator with authority to grant dispositive motions" and instead urged the arbitrator to follow the course of *307 action set out in the arbitration provision-review the records of the business, make inquiry of the parties as to any transactions that are disputed, conduct a hearing of the matter with the parties in attendance (if necessary), and, finally, issue a written report reconciling the capital accounts. This is not evidence indicating that Norvell is seeking to move the matter from the arbitral forum to a judicial forum; rather, it indicates how Norvell desired the arbitrator to conduct the arbitration proceedings. Although Norvell surely does take the position that the arbitrator lacks authority to consider dispositive motions, it does not necessarily follow that Norvell is therefore arguing that the trial court does have that authority. Instead, Norvell is simply arguing that the arbitrator should proceed with its review of the partnership's records and resolve the dispute submitted to it without making intermediate judgments.[6]
None of the documentary evidence in the record indicates that Norvell clearly and unequivocally waived his right to have this dispute with Parkhurst decided in arbitration. We note, however, that Parkhurst has also argued that Norvell expressly waived that right in a December conference call with the arbitrator. Norvell, however, disputes this claim and asserts that he never agreed that the trial court should consider Parkhurst's partial summary-judgment motion. There is no transcript of the conference call or any other evidence of what transpired during that call in the record; instead, we have before us only the unsupported assertions of counsel on either side. Even if Norvell did not expressly refute Parkhurst's recollection of the conference call, however, unsupported assertions concerning the substance of that call could not form the basis of a judgment on appeal affirming the trial court's decision to lift the stay. As explained in Davant v. United Land Corp., 896 So.2d 475, 483 (Ala. 2004), this is not because we doubt counsel's integrity or credibility, but because, as an appellate court, we are limited to the facts as established by the record. There is no evidence in the record from which we can conclude that Norvell clearly waived his right to proceed in arbitration; accordingly, it was error for the trial court to lift the stay for the purpose of considering matters the parties undisputedly agreed to arbitrate.
IV.
Pursuant to an arbitration provision in a dissolution agreement entered into by her deceased husband Andrew, Parkhurst initiated arbitration proceedings with Norvell and the partnership to resolve a dispute regarding the dissolution of the partnership. After Norvell opposed Parkhurst's attempt to have the arbitrator enter an intermediary order limiting the scope of his review of the partnership's business records, Parkhurst filed a motion seeking the same relief in the trial court, purportedly because Norvell and the arbitrator agreed that she should do so. However, there is no evidence in the record indicating that Norvell made such an agreement and he, in fact, denies doing so. In the absence of any evidence that would establish such an agreement, as well as any other evidence that would conclusively establish that Norvell clearly and unequivocally expressed an intent to waive his right to have the arbitrator resolve this dispute, *308 Parkhurst has failed to meet her heavy burden of showing that the arbitration provision in the dissolution agreement should not be enforced. Accordingly, the trial court erred by lifting the arbitral stay in order to consider Parkhurst's motion for a partial summary judgment, and its judgment doing so is hereby reversed and the cause remanded.
REVERSED AND REMANDED.
Bolin, Murdock, Main, and Bryan, JJ., concur.

Norvell at some point accused Andrew of violating a covenant not to compete in the dissolution agreement; however, the details of that accusation are not contained in the record before us.

On July 24, 2015, the trial court did act to appoint an arbitrator after Parkhurst and Norvell were unable to agree on an arbitrator. See generally Robertson v. Mount Royal Towers, 134 So.3d 862, 869 (Ala. 2013).

Norvell also argued that there was nothing in the dissolution agreement limiting the time or scope of the arbitrator's review of the partners' capital accounts.

Norvell and the partnership had previously filed a petition for the writ of mandamus with this Court on April 17, 2017 (case no. 1160605). That petition was still pending when they filed their notice of appeal but was ultimately denied without an opinion on June 29, 2017.

The United States Court of Appeals for the Seventh Circuit has explained the mend-the-hold doctrine as follows:
"Th[e] [mend-the-hold] doctrine, which takes its name from a nineteenth-century wrestling phrase, is less a set of rules than a flexible concept of equity. It prevents one party to litigation, especially in contract disputes, from trying to change its position or theories at such a late stage in the dispute as to cause unfair prejudice to the opposing party."
Estate of Burford v. Accounting Practice Sales, Inc., 851 F.3d 641, 644 (7th Cir. 2017).

We express no opinion on how the arbitrator in this case ultimately chooses to structure the arbitration proceedings before him; we note only that this Court has recognized an arbitrator's "discretion in structuring arbitration procedures." Birmingham News Co. v. Horn, 901 So.2d 27, 54-55 (Ala. 2004), overruled on other grounds by Hereford v. D.R. Horton, Inc., 901 So.2d 27 (Ala. 2004).