**In re: UNIVERSAL SERVICE FUND TELEPHONE BILLING PRACTICES LITIGATION**

**This Order Relates to All Cases No. 02–MD–1468–JWL.**

United States District Court, D. Kansas.

June 4, 2004.

Isaac L. Diel, Diel & Seelman, P.C., Prairie Village, KS, Jennifer F. Connolly, The Wexler Firm, Chicago, IL, Marc R. Stanley, Stanley Mandel & Iola, Dallas, TX, for Plaintiff.

Christopher J. Leopold, Mark M. Iba, Stinson Morrison Hecker LLP, Lynn S. McCreary, Bryan Cave LLP, Kansas City, MO, Julie E. Grimaldi, Sprint, Mark D. Hinderks, Stinson Morrison Hecker LLP, Overland Park, KS, Mark B. Blocker, Sidley Austin Brown & Wood, Chicago, IL, for Defendants.

Fred Campbell, Michael Nilsson, Patrick O'Donnell, Harris, Wiltshire & Grannis, LLP, Washington, DC, for Respondent.

Patricia C. Howard, Washington, DC, pro se.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This multidistrict litigation consists of numerous putative class action lawsuits arising from the practices of defendants AT & T Corporation ("AT & T") and Sprint Communications Company, L.P. ("Sprint") and non-parties MCI WORLD-COM Network Services, Inc. and MCI

WorldCom Communications, Inc. (collectively "MCI")[1] of charging their customers to recoup their contributions to the federal Universal Service Fund ("USF") program. Plaintiffs are customers or former customers of defendants and MCI who allege that defendants and MCI engaged in an illegal scheme of conspiring to overcharge them for USF-fund surcharges, thereby creating a secret profit center. This matter is presently before the court on defendants' motion to compel arbitration of the claims of MCI business customers included within the conspiracy class (Doc. 248). For the reasons explained below, this motion is denied.

## BACKGROUND

On December 1, 2003, the court entered a memorandum and order in this case that largely granted defendants' motions to compel arbitration. *See generally In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F.Supp.2d 1107 (D.Kan. 2003). In relevant part, the court compelled arbitration of the MCI residential customers' claims against Sprint and AT & T under equitable estoppel principles. *Id.* at 1138–41.

Approximately two weeks later on December 17, 2003, defendants raised the issue of the potential arbitrability of the MCI business customers' claims for the first time during a status conference in this case. This issue arose during a discussion relating to plaintiffs' then-pending motion for class certification. Defendants requested, and the court granted, leave to submit additional briefing on this issue and its potential impact on plaintiffs' motion for class certification. In defendants' supplemental briefs, they urged the court to modify the conspiracy class definition so

that it did not include any MCI business customers because, defendants argued, the claims of the then-lone MCI business customer plaintiff, NYLB, Inc. d/b/a Siany ("NYLB"), are subject to an arbitration clause identical to the one pursuant to which the court compelled arbitration of the MCI residential customers' claims.

Approximately two months later on February 13, 2004, the court entered a memorandum and order granting plaintiffs' motion for class certification. *See generally In re Universal Service Fund Tele. Billing Practices Litig.*, 219 F.R.D. 661 (D.Kan. 2004). In this order, the court rejected defendants' argument that the conspiracy class definition should be modified to exclude MCI customers. The court reasoned that defendants waived any right they may have had to compel arbitration of the MCI business customers' claims by failing to timely raise the issue. *Id.* at 682–83. In addition, the court stated that it was not inclined in any event to compel arbitration of the MCI business customers' claims on the same basis that it compelled arbitration of the MCI residential customers' claims. *Id.* at 683–84. Accordingly, the court defined the conspiracy class to include "[a]ll business long distance customers of AT & T, Sprint, or MCI in the United States ... who paid a USF charge on or after August 1, 2001." *Id.* at 664.

Approximately two weeks later on February 27, 2004, defendants filed the current motion to compel arbitration of the claims of MCI business customers included within the conspiracy class. Defendants once again contend the court should compel arbitration of the MCI business customers' claims on the same basis that it compelled arbitration of the MCI residen-

---

1. These MCI entities are subsidiaries of WorldCom, Inc. and, like WorldCom, Inc., have filed for bankruptcy. The bankruptcy court declined to lift the automatic stay to allow plaintiffs to pursue their claims against MCI, and therefore plaintiffs are currently precluded from naming either of these MCI entities as defendants in this case.

tial customers' claims. Defendants also argue that they could not have waived their right to compel arbitration of the unnamed MCI class members' claims because those class members were not parties to this lawsuit until the court entered the order certifying the conspiracy class on February 13, 2004. In response, plaintiffs contend the court should construe defendants' motion as a motion to reconsider the court's February 2004 order, and they argue defendants have not stated a valid basis for the court to reconsider that order.

## ANALYSIS

■ As a threshold matter, the court will address plaintiffs' contention that the court should characterize the motion as a motion to reconsider the court's February 2004 order in which the court rejected defendants' argument that the conspiracy class should be modified to exclude MCI business customers. The issue presented in the court's February 2004 order was *whether the court should modify the conspiracy class definition* to exclude MCI business customers. By comparison, here the issue presented is *whether the court should compel arbitration* of the MCI business customers' claims. Although the court's resolution of both issues turns on the same considerations, the relief sought is different. Thus, the court rejects plaintiffs' characterization of the motion and will construe the motion precisely as it is labeled, which is as a motion to compel arbitration.

For the reasons explained below, the court will deny defendants' motion because, as previously explained in the court's February 2004 order, defendants waived any right they may have had to compel arbitration of the MCI business customers' claims. The court will not endeavor to resolve the substantive issue of the arbitrability of those claims given the absence of a pronouncement from the

Tenth Circuit on what the court regards as a critical issue.

## A. Waiver

■ The court's conclusion that defendants waived any right they may have had to compel arbitration of the MCI business customers' claims begins with the reasons stated in the court's February 2004 order. In order to avoid a litany of piecemeal quotes from that order, the court will simply quote the entire relevant portion of that order as a starting point to explain the court's rationale on this issue.

The right to arbitration, like any other contractual right, can be waived. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir.1994). In determining whether the right to arbitration has been waived, the court must examine the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Id.* (quoting *Peterson v. Shearson/Am. Express*, 849 F.2d 464, 467–68 (10th Cir. 1988)); *accord McWilliams v. Logicon,*

*Inc.,* 143 F.3d 573, 576 (10th Cir.1998). Whether a waiver has occurred depends upon the facts of the particular case. *Reid Burton Constr., Inc. v. Carpenters Dist. Council,* 614 F.2d 698, 702 (10th Cir.1980).

Defendants filed their motions to compel arbitration in this case almost sixteen months ago on October 16, 2002. Those motions did not ask the court to compel arbitration of *any* of the MCI customers' claims. In plaintiffs' memoranda in response to defendants' motions, plaintiffs pointed out that defendants did not ask the court to compel arbitration of the MCI customers' claims. The first time defendants urged the court to compel arbitration of the MCI customers' claims was in their reply briefs. In AT & T's reply brief, AT & T quoted the arbitration provision in the "MCI General Service Agreement for Residential Customers." Notably, neither defendant submitted an MCI service contract as an exhibit in support of their argument that the court should compel arbitration of the MCI customers' claims. The *only* MCI service contract that was a part of the record on this issue was the residential customer service contract, and it was submitted as an exhibit to plaintiffs' response memoranda.

The court held a hearing on defendants' motions to compel arbitration more than a year ago on February 5, 2003. At that hearing, the issue of compelling arbitration of the MCI customers' claims was sufficiently discussed such that, despite the fact that defendants first raised this argument in their reply brief, the court considered the issue to have been sufficiently explored that it was a component of defendants' motion to compel arbitration.

On February 20, 2003, plaintiffs filed a motion for leave to file [a] second consolidated and amended class action complaint that, among other things, sought to join Kathy Snavely and Carol Zinsmeister, both MCI residential customers, and NYLB as plaintiffs. On March 10, 2003, plaintiffs' second consolidated and amended class action complaint was filed pursuant to court order, thus joining NYLB as a plaintiff in this case.

On May 27, 2003, the court entered a memorandum and order resolving one of the issues raised by plaintiffs in opposition to defendants' motion to compel arbitration. *See generally In re Universal Service Fund Tel. Billing Practices Lit.,* No. 02–1468, 2003 WL 21254765, at *1–6 (D.Kan. May 27, 2003). In that memorandum and order, the court advised the parties that it would take the remainder of defendants' motion to compel arbitration under advisement until the United States Supreme Court decided whether it would grant AT & T's petition for certiorari in *AT&T Corp. v. Ting.* On October 6, 2003, the Supreme Court denied AT & T's petition for certiorari. *See AT&T Corp. v. Ting,* —— U.S. ——, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003). On December 1, 2003, the court entered a memorandum and order devoting approximately fifty pages to ruling on defendants' motion to compel arbitration. *See In re Universal Serv. Fund Tel. Billing Practices Lit.,* [300 F.Supp.2d 1107 (D.Kan.2003).]. After that comprehensive memorandum and order was issued, defendants raised the issue of compelling arbitration of NYLB's claims for the first time during a status conference on December 17, 2003.

The court is of the opinion that, on balance, the factors listed above weigh in favor of finding that defendants waived any right they may have had to compel arbitration of NYLB's claims. Defendants' delay in raising this issue is inconsistent with the right to arbitrate. Defendants should have asserted any ar-

guable right they had to compel arbitration of NYLB's claims within a reasonably prompt period after NYLB joined in this case as a plaintiff. Further, defendants' delay in raising this issue was substantial. They raised this issue more than nine months after NYLB joined in this case. There was a six-month interlude on the arbitration matter while the Supreme Court decided whether to grant certiorari in *Ting*. If defendants had truly wanted to compel arbitration of NYLB's claims, that issue could have been fully briefed by the parties during that interim time period.

Perhaps more importantly, though, the "litigation machinery ha[d] been substantially invoked" and substantial intervening steps had taken place by the time defendants raised this argument. By December 17, 2003, the court and the parties had already devoted an inordinate amount of resources to resolving substantial and meaningful threshold legal issues—in particular, the extent to which the named plaintiffs' claims were arbitrable—that defined the contours of this lawsuit. Defendants now raise this issue as an afterthought on a point they should have raised months ago. The court is not inclined to belatedly rehash the entire arbitration issue when defendants should have raised it in a manner that was apparent to the court long ago. Accordingly, the court holds that defendants have waived any right they may have had to arbitrate the MCI business customers' claims.

*In re Universal Serv. Fund,* 219 F.R.D. at 682–83.

The court finds significant the fact that defendants did not raise the issue of compelling arbitration with respect to the MCI business customers until more than nine months after NYLB became a plaintiff in this case notwithstanding ample time and opportunities to do so. Defendants moved to compel all of the other arbitrable claims in this case more than fourteen months before first raising the issue of compelling arbitration of the MCI business customers' claims. Meanwhile, defendants filed motions to dismiss and motions to refer plaintiffs' claims to the Federal Communications Commission to exercise primary jurisdiction, the court ruled on motions to remand some of the cases to state court, the parties engaged in discovery and filed motions associated with discovery, the court heard oral argument on defendants' motions to compel arbitration, and the court allowed the parties to submit supplemental briefs addressing the impact of legal authority that arose during the interim. By the time defendants raised the issue of compelling arbitration of the MCI business customers' claims for the first time on December 17, 2003, "the court and the parties had already devoted an inordinate amount of resources to resolving substantial and meaningful threshold legal issues—in particular, the extent to which the named plaintiffs' claims were arbitrable—that defined the contours of this lawsuit." *In re Universal Serv. Fund,* 219 F.R.D. at 683. A finding of waiver of the right to arbitration under these circumstances is well supported by case law. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 26 (2d Cir. 1995) (holding the right to arbitration was waived where party waited seven months to demand arbitration despite filing numerous pleadings, none of which asserted the defense of arbitration); *S & H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir.1990) (same, where party waited eight months after lawsuit was filed to demand arbitration during which time the parties filed motions and took discovery); *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497–98 (5th Cir.1986) (same, where party waited eight months after lawsuit was filed to demand arbitration during

which time the party took discovery); *see also, e.g., Eagle Traffic Control, Inc. v. James Julian, Inc.,* 945 F.Supp. 834, 835 (E.D.Pa.1996) (same, where parties had been actively litigating for seven months).

The court does not agree that defendants had any objective basis to believe that they had raised to the court the issue of the arbitrability of *all* of the MCI customers' claims in their motions to compel arbitration. The court has thoroughly reviewed the record on this issue and remains firmly convinced that they did not do so. Defendants originally moved to compel arbitration of the Sprint and AT & T residential customers' claims, and they cited the provisions of those residential customers' service contracts with Sprint and AT & T. When defendants finally, and potentially fatally belatedly, raised the issue of arbitration of the MCI customers' claims in their reply brief, they generically referred "to the arbitration provisions in the contracts between such customers and MCI." AT & T's Reply Mem. in Supp. of its Mot. to Compel Arbitration and to Dismiss or Stay Proceedings (Doc. 115), at 12. Then, defendants cited *only* the MCI residential customer service agreement. *Id.* at 13. Thus, the only inference that could have been drawn from the record was that defendants were moving to compel arbitration of the MCI residential customers' claims, just like they did with respect to the AT & T and Sprint residential customers. If defendants wanted to compel arbitration of the MCI business customers' claims, they should have stated so in their briefs and, at a bare minimum, at least mentioned the MCI business customers' service agreement. They did not do so, nor did they at the first available opportunity take the position with the court that they did so by filing a motion to reconsider the court's December 2003 order which referred only to MCI residential customers. Therefore, the court concludes that defendants did not raise this issue in conjunction with their original motions to compel arbitration, and could not reasonably have had a good faith belief that they did so. The court is once again left with the definite and firm conviction that the issue of compelling arbitration of NYLB and the other MCI business customer class members' claims was truly a mere afterthought by defendants.

Finally, the court will address defendants' argument, which, notably, they raise in one brief paragraph without any citation to authority, that they did not waive their right to compel arbitration of the claims of the MCI class members other than NYLB because defendants promptly moved to compel arbitration of those class members' claims within days after they became parties to this case after the court certified the class in February of 2004. The court has been able to locate only one case that has vaguely touched on a similar issue. In *Allied Sanitation, Inc. v. Waste Management Holdings, Inc.,* 97 F.Supp.2d 320 (E.D.N.Y.2000), the district court held that a defendant did not waive the right to arbitrate a putative class member's claims by waiting until after class certification to move to compel arbitration. *Id.* at 327–33. Significantly, though, it appears that the arbitration clause at issue was the only one that existed between the defendant and any of the plaintiffs, either named or unnamed. There is no suggestion in *Allied Sanitation* that the defendant had previously moved to compel arbitration of all of the other arbitrable claims in the case, allowed fourteen months to lapse, gained the benefit of the court's ruling on its motion to compel arbitration, realized that it failed to move to compel arbitration of one of the named plaintiffs' claims, then nearly three months later filed a second motion to compel arbitration, this time targeting the originally omitted category of plaintiffs, as is the case here. Thus, the court finds the district court's opinion in

*Allied Sanitation* to be unhelpful and unpersuasive because, as the Tenth Circuit has explained, the issue of waiver of the right to arbitration "depends upon the facts of each case." *Reid Burton Constr. v. Carpenters Dist. Council,* 614 F.2d 698, 702 (10th Cir.1980). Here, defendants knew that NYLB was intended to be, and now is, a named plaintiff representing MCI business customer class members. Similarly, they knew that the other AT & T, Sprint, and MCI residential customer plaintiffs were intended to be named plaintiffs representing residential customer class members. Significantly, defendants moved to compel arbitration of all of the residential customer claims, but did not move to compel arbitration of NYLB's claims despite knowing that NYLB was intended to serve as a class representative for the unnamed MCI business customers, and defendants' failure to do so is entirely inconsistent with any right they may have had to arbitrate NYLB's or the other MCI business customer class members' claims. Thus, the court's waiver analysis applies with equal force to the unnamed class members. Because defendants' motion to compel arbitration of the MCI business customers' claims appears to be a woefully belated second bite at the apple, the facts of the case call for a finding of waiver.

Accordingly, for all of these reasons, the court concludes that defendants have waived any right they may have had to compel arbitration of the MCI business customers' claims.

## B. The Substantive Aspect of Defendants' Motion

Lastly, the court wishes to comment briefly on the substantive aspect of defendants' motion. Defendants correctly point out that all of the plaintiff MCI customers, both residential and business customers alike, who are subject to an arbitration agreement

are essentially attempting to 'have it both ways.' On the one hand, plaintiffs want to rely on the terms of their service contracts to claim that AT & T, Sprint, and MCI have conspired against them. But then, on the other hand, they do not want to be bound by the arbitration clauses in their service contracts despite the fact that those service contracts are the basis for their antitrust claims.

*Id.* at 1140. Thus, the court is aware that it *could* compel arbitration of NYLB's and the other MCI business customer class members' claims, just as the court did with respect to the MCI residential customers' claims under the reasoning set forth in cases such as *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524 (5th Cir. 2000); *MS Dealer Service Corp. v. Franklin,* 177 F.3d 942 (11th Cir.1999); and *Hughes Masonry Co. v. Greater Clark County School Building Corp.,* 659 F.2d 836 (7th Cir.1981).

Nevertheless, the court decided to compel arbitration of the MCI residential customers' claims in part because Sprint and AT & T both had arbitration agreements with their own residential customers, and failure to enforce the parallel arbitration agreements between MCI and MCI's residential customers would have rendered meaningless Sprint and AT & T's arbitration agreements with their respective customers. *See In re Universal Serv. Fund,* 300 F.Supp.2d at 1140. By comparison, Sprint and AT & T do not have arbitration agreements with their business customers like MCI does with its business customers. "Thus, the court's rationale in its prior opinion that the meaningfulness of the Sprint and AT & T arbitration clauses would be undercut if the court did not compel arbitration of all of the residential customers' claims does not apply with respect to the business customers' claims." *In re Universal Serv. Fund,* 219 F.R.D. at

684. While defendants contend that this distinction does not matter, the court is of the opinion that this consideration is significant (albeit perhaps not determinative under the reasoning of *Grigson, MS Dealer, Hughes,* and their progeny, none of which are Tenth Circuit cases) in ascertaining whether notions of equity and fairness call for the court to compel arbitration of the MCI business customers' claims. The issue of compelling arbitration of the MCI residential customers' claims presented a close call, and the court is simply not inclined to push the boundaries of equity any further where the reasons for compelling arbitration are even more attenuated. Accordingly, the court would not be inclined to compel arbitration of the MCI business customers' claims.

With that being said, the court declines to resolve this issue definitively because the degree of discretion the court possesses with respect to this matter is unclear. On the one hand, the Eleventh Circuit has held that this issue is reviewable de novo as a matter of law. *See MS Dealer,* 177 F.3d at 946–48 (reversing and remanding to the district court to compel arbitration under an equitable estoppel theory). The Seventh Circuit has similarly reversed and remanded a case to the district court to compel arbitration under an equitable estoppel theory, although the Court did not discuss the degree of discretion possessed by the district court. *See Hughes Masonry,* 659 F.2d at 838–39. If the court possesses no discretion on this matter, as stated in *MS Dealer* and suggested in *Hughes Masonry,* then presumably the court must compel arbitration of the MCI business customers' claims. On the other hand, the Fifth Circuit has stated that whether a district court compels arbitration under equitable estoppel principles is a matter that is reviewed for an abuse of discretion. *See Grigson,* 210 F.3d at 528 (holding the district court did not abuse its discretion by compelling arbitration under

equitable estoppel principles). If that is the correct standard, then the court would exercise its discretion to decline to compel arbitration with respect to the MCI business customers' claims for the reasons stated. The Tenth Circuit has not addressed the issue of applying principles of equitable estoppel to allow a non-signatory to compel arbitration of a signatory's claims nor has it addressed the degree of discretion, if any, possessed by the district court in applying this equitable principle. Accordingly, because of the lack of a pronouncement from the Tenth Circuit on what the court views as a critical point in resolving this issue, and because the issue is technically moot given the court's ruling that defendants have waived any right they may have had to compel arbitration of these MCI business customers' claims in any event, the court declines to definitively resolve this issue.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to compel arbitration of the claims of MCI business customers included within the conspiracy class (Doc. 248) is denied.