478 F.3d 96
 Robert ROSS and Randal Wachsmuth, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees-Cross-Appellants,
v.
AMERICAN EXPRESS COMPANY, American Express Travel Related Services Company, Inc., and American Express Centurion Bank, Defendants-Appellants-Cross-Appellees.
 Docket No. 06-4598-CV(L).
 Docket No. 06-4759-CV(XAP).
 United States Court of Appeals, Second Circuit.
 Argued: November 21, 2006.
 Decided: February 13, 2007.
 
 Merrill G. Davidoff, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs-Appellees-Cross-Appellants.
 Jonathan M. Jacobson, Wilson Sonsini Goodrich & Rosati, New York, N.Y. (Meredith Kotler, Wilson Sonsini Goodrich & Rosati; Evan R. Chesler, Cravath, Swaine & Moore LLP, New York, NY, on the brief) for Defendants-Appellants-Cross-Appellees.
 Before: WINTER, HALL, Circuit Judges, and GLEESON,* District Judge.
 WINTER, Circuit Judge.
 
 
 1
 American Express Company, American Express Travel Related Services Company, Inc., and American Express Centurion Bank (collectively, "Amex") appeal from Judge Pauley's denial of a motion to compel arbitration. Appellees Robert Ross and Randal Wachsmuth move to dismiss on the ground that we lack jurisdiction under Section 16 of the Federal Arbitration Act ("FAA"). For the reasons stated below, we deny the motion.
 
 
 2
 We assume familiarity with the opinion below. See Ross v. American Express Co., 2005 WL 2364969 (S.D.N.Y. Sept. 27, 2005). We recount here only those facts necessary to dispose of the instant motion.
 
 
 3
 More than twenty class action complaints have been filed against VISA and MasterCard — the two largest credit card networks — and their member banks (collectively, the "MDL Defendants"), alleging violations of the Sherman Act arising from an alleged conspiracy to fix fees for conversion of foreign currencies. See In re Currency Conversion Fee Antitrust Litig., 265 F.Supp.2d 385, 390-91 (S.D.N.Y.2003). The cases were referred to the Judicial Panel on Multidistrict Litigation and consolidated in the Southern District of New York as In re Currency Conversion Fee Antitrust Litig., MDL No. 1409. Id.
 
 
 4
 Subsequent to consolidation, the district court granted, in part, a motion by the MDL Defendants to compel arbitration. To the extent relevant here, the court held that: (i) cardholders whose cardholder agreements contained arbitration clauses as of the date on which they became putative class members were subject to arbitration; (ii) those cardholders were also required to arbitrate their claims against non-signatory banks under the doctrine of equitable estoppel; and (iii) the cardholders' claimed defense against arbitration — that the arbitration agreements were unenforceable as the result of an illegal conspiracy — could not defeat a motion to compel arbitration where the complaint had not alleged an antitrust claim based on that defense. See In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d 237, 258-59, 263-64 (S.D.N.Y.2005).
 
 
 5
 In July 2004, appellees filed a class action complaint against appellants Amex in which they asserted the same claims raised in the MDL suit: that appellants had conspired with the MDL Defendants to fix fees for transactions in foreign currencies. Ross, 2005 WL 2364969, *1-2 (S.D.N.Y.2005). Appellees also alleged that appellants had conspired with the MDL Defendants to "impose compulsory arbitration clauses on [their] cardholders and the cardholders of [their] co-conspirators" in order "to suppress competition and deprive their cardholders of a meaningful choice concerning the arbitration of disputes." (Compl.¶¶ 86, 88)
 
 
 6
 In April 2005, appellants moved, pursuant to 9 U.S.C. §§ 3 and 4, to dismiss the complaint and compel arbitration or, in the alternative, stay the proceedings pending arbitration. Appellants acknowledged that they were not a signatory to any express arbitration agreement with the appellees. Nevertheless, they argued that the arbitration clauses contained in the cardholder agreements with the MDL Defendants bound appellees to arbitrate their dispute with appellants in accordance with those clauses under principles of equitable estoppel.
 
 
 7
 The district court agreed with appellants. Ross, 2005 WL 2364969, at *4-5. In particular, the district court found that the "claims against [appellants] are `inextricably intertwined' with the cardholder agreements" with the MDL Defendants, which contained the mandatory arbitration clauses. Id. at *6. The district court went on to hold that, "[b]ecause [appellees'] antitrust claims against [appellants] derive from the very same agreements [appellants] endeavor to enforce, this Court concludes that, if applicable, [appellants] may avail [themselves] of the arbitration clauses based on estoppel." Id.
 
 
 8
 Nevertheless, the district court refused to stay the proceedings or to compel arbitration. It reasoned that, because the appellees had raised an antitrust claim concerning the validity of the arbitration clauses, a jury trial was necessary to determine the validity of the arbitration clauses prior to enforcement. Id. at *10.
 
 
 9
 Appellants then brought the present appeal, invoking Section 16 of the FAA, which grants jurisdiction to courts of appeals over interlocutory appeals from refusals to stay an action under 9 U.S.C. § 3 and from denials of petitions to compel arbitration under 9 U.S.C. § 4. 9 U.S.C. § 16(a)(1)-(2). Section 3 provides:
 
 
 10
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .
 
 
 11
 9 U.S.C. § 3 (emphasis added). Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (emphasis added).
 
 
 12
 In support of their motion to dismiss for lack of jurisdiction, appellees argue that because the obligation to arbitrate arises from principles of estoppel and because Sections 3 and 4 apply only to failures to arbitrate pursuant to a "written" agreement, Section 16 does not provide for appellate jurisdiction in the present matter. If so, the appeal would have to be dismissed because it is clearly of an interlocutory nature. See 28 U.S.C. § 1291.
 
 
 13
 We disagree. We have noted that "[a]rbitration is strictly a matter of contract." Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir.1995) (citing United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). As such, ordinary principles of contract law apply, and we have recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel. Thomson-CSF, 64 F.3d at 776.
 
 
 14
 In the present matter, the district court held that appellants are entitled to the benefit of a written arbitration agreement because the claims against them are "`inextricably intertwined' with the cardholder agreements." Ross, 2005 WL 2364969, at *6. In so holding, the district court ruled that it would be inequitable for parties who have signed a written arbitration agreement — appellees — not to abide by that agreement with regard to a non-signatory to the agreement — 24 appellants. This finding meets the writing requirement of the FAA and, thus, we have jurisdiction under Section 16.[1]
 
 
 15
 To hold otherwise would depart from the language and policies of the FAA and quite possibly lead to perverse and unnecessary complexities in cases involving arbitration agreements. Where a party is deemed bound by a written arbitration agreement because of principles of equitable estoppel, that written agreement alone creates, defines, and provides procedures — including the method for selecting the arbitrators — for implementing the arbitration obligation. Both the language of the FAA requiring a writing and all possible policy reasons underlying that requirement are thus satisfied in the present matter. In every relevant sense, therefore, appellants are appealing from the refusal to compel arbitration under a written arbitration agreement.
 
 
 16
 Moreover, a contrary ruling here would be difficult to contain. Because the requirement of a written arbitration agreement is pervasive in the FAA, see 9 U.S.C §§ 2-4; see also id. §§ 5, 9, 13, 16, appellees' reasoning would not only deprive appellate courts of interlocutory jurisdiction over equitable estoppel cases but would drastically alter the application of the FAA to arbitration proceedings based on equitable estoppel. For example, district courts would seemingly have no authority to stay proceedings or compel arbitration pursuant to Sections 3 and 4 of the FAA where principles of equitable estoppel bind parties to arbitrate under an arbitration agreement, even though the arbitration agreement is written. See 9 U.S.C. § 3 (court may stay suit "referable to arbitration under an agreement in writing") (emphasis added), id. § 4 (court may compel arbitration "under a written agreement for arbitration") (emphasis added). Moreover, cases, such as the present matter, may involve signatories to arbitration agreements bound to arbitrate with other signatories to that agreement and with yet other parties under equitable estoppel. Were appellees' view to prevail, parties seeking to delay arbitration or to introduce mischievous complexities that would be grounds for judicial appeals, would have ample opportunity to do so, including the assertion of claims for the partial or full bifurcation of cases involving a single writing.[2]
 
 
 17
 Finally, to hold the writing requirement unfulfilled would be contrary to the caselaw in this and several other circuits, where courts have frequently stayed proceedings and compelled arbitration under the FAA on equitable estoppel grounds. See, e.g., JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004); Astra Oil Co., Inc. v. Rover Navigation, Ltd., 344 F.3d 276 (2d Cir.2003); Smith/Enron Cogeneration, Ltd. P'ship, Inc. v. Smith Cogeneration International, Inc., 198 F.3d 88 (2d Cir.1999); see also Thomson-CSF, 64 F.3d at 779 (surveying cases in other circuits where signatories have been bound to arbitrate with non-signatories "because of the close relationship between the entities involved . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." (alteration in original, internal quotation marks and citation omitted)). A fortiori, accepting appellees' arguments would also be contrary to the assumption of appellate jurisdiction in appeals from the denial of stays in such cases. See Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir.2005), JLM, 387 F.3d at 169, 177, Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 404 (2d Cir.2001).
 
 
 18
 For the above reasons, we hold that when a district court finds that a signatory to a written arbitration agreement is equitably estopped from avoiding arbitration with a nonsignatory, the writing requirement of Section 16 of the FAA is met. Accordingly, the motion to dismiss is denied.
 
 
 
 Notes:
 
 
 *
 The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 In ruling on this motion, we make no determination as to whether the district court was correct in holding that appellants are entitled to arbitration via equitable estoppel — a determination that will only be made following full briefing and argument on appeal. This ruling touches only upon our jurisdiction under the FAA to hear such an appeal
 
 
 [2]
 To the extent cases in other circuits are contrary to our holding,see DSMC Inc. v. Convera Corp., 349 F.3d 679 (D.C.Cir.2003) and In re Universal Service Fund Tel. Billing Practice Litig., 428 F.3d 940 (10th Cir.2005), we decline to follow them.