RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WAYNE CARLISLE, et al.,

                *Plaintiffs-Appellees,*

     *v.*

CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP, et al.,

                *Defendants-Appellants.*

No. 06-5290

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 05-00059—David L. Bunning, District Judge.

Argued: November 1, 2007

Decided and Filed: April 9, 2008

Before: DAUGHTREY and COOK, Circuit Judges; VINSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Douglas E. Whitney, McDERMOTT, WILL & EMERY, LLP, Chicago, Illinois, for Appellants. Paul M. De Marco, WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A., Cincinnati, Ohio, for Appellees. **ON BRIEF:** Douglas E. Whitney, McDERMOTT, WILL & EMERY, LLP, Chicago, Illinois, Russell S. Sayre, TAFT, STETTINIUS & HOSSISTER, LLP, Cincinnati, Ohio, Robert B. Craig, TAFT, STETTINIUS & HOLLISTER, LLP, Covington, Kentucky, Earle Jay Maiman, THOMPSON HINE, LLP, Cincinnati, Ohio, Richard J. Idell, IDELL & SEITEL, LLP, San Francisco, California, Donald L. Stepner, ADAMS, STEPNER, WOLTERMANN & DUSING, PLLC, Covington, Kentucky, for Appellants. Paul M. De Marco, James R. Cummins, Stanley M. Chesley, Jean M. Geoppinger, WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A., Cincinnati, Ohio, for Appellees.

_____

[*]The Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. In this interlocutory appeal, the defendants seek to overturn an order of the district court that denied their motion for a stay pending arbitration of the dispute that brought the parties into court. To establish jurisdiction, they rely on Section 16(a)(1) of the Federal Arbitration Act, 9 U.S.C. § 16(a)(1), which permits interlocutory review of orders denying motions to stay under Section 3 of the Act. *See* 9 U.S.C. § 3. However, none of the defendants involved in this appeal was a signatory to the written arbitration agreement in question. Instead, they based their effort to compel arbitration on a theory of equitable estoppel, a claim that the district court considered and rejected. In the absence of an applicable written agreement to arbitrate, the plaintiffs contend that Section 3 is inapplicable in this action and, consequently, that we are without jurisdiction to hear this appeal on an interlocutory basis. We agree.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying the dispute in this case are not relevant at this stage of the litigation, except as they throw light on the jurisdictional question. Plaintiffs Carlisle, Bushman, and Strassel sold their construction equipment business and sought advice on how to minimize the taxes on their sale from Arthur Andersen, LLP, an accounting firm; Bricolage Capital LLC, a "financial boutique"; and Curtis, Mallet-Prevost, Colt & Mosle, LLP, a law firm. Arthur Andersen, Bricolage Capital, and Curtis Mallet recommended investment in a tax shelter referred to as a "leveraged option strategy," which involved foreign currency exchange options. Following this advice, Carlisle, Bushman, and Strassel each created separate business entities, consisting of limited liability companies, to implement the leveraged option strategy. These LLCs then entered into investment management agreements with Bricolage Capital. Defendants Arthur Andersen and Curtis Mallet were not parties to the management agreements, which contained the following arbitration clause: "Any controversy arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration conducted in New York, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association."

As a condition of participating in the tax shelters, the plaintiffs were required to invest $4,350,000 in warrants to purchase stock of unidentified small, high-tech companies. The plaintiffs formed another entity, WJC Strategic Investments, to buy the warrants, which were eventually found to be worthless. The plaintiffs also signed individual retainer agreements with defendant Curtis Mallet, for a fee of $100,000 each. The IRS later determined that the "leveraged option strategy" was an abusive tax shelter but offered amnesty to taxpayers who had invested in them, under certain conditions. The defendants did not inform the plaintiffs of these IRS rulings, and the plaintiffs were eventually forced to join an IRS settlement program that required them to pay taxes, penalties, and interest due to federal tax authorities, a sum that exceeded $25 million.

Plaintiffs Carlisle, Bushman, Strassel, and their various business entities filed suit against nine defendants, including Arthur Andersen, Bricolage Capital, and Curtis Mallet, alleging fraud, negligence, civil conspiracy between the defendants, and breach of fiduciary duty, among other counts. Relying on the arbitration agreements with the principal plaintiffs, Bricolage Capital filed a motion to stay the proceedings pending arbitration of disputes arising under the management agreements. While that motion was pending, Bricolage Capital notified the court that it had filed a petition in bankruptcy; an automatic stay as to Bricolage Capital was subsequently entered. The remaining defendants nevertheless sought to step into Bricolage Capital's shoes, seeking their own stay of the proceedings based on their theory that equitable estoppel should prevent the plaintiffs

from "avoiding arbitration" under the contracts between Bricolage Capital and the plaintiffs and, as a result, that the arbitration clauses in those agreements should be binding on the plaintiffs as against all defendants. The district court rejected the defendants' equitable-estoppel argument and denied the motion to stay for substantive reasons that need not detain us here, given our determination that we do not have jurisdiction to address the merits of the claims. The defendants now seek appellate review of that denial, for the first time invoking Section 3 of the Federal Arbitration Act in an effort to establish interlocutory jurisdiction under Section 16 of the Act.

## *DISCUSSION*

The jurisdiction question presented by this appeal is one of first impression in this circuit, although it has been addressed under similar circumstances in at least three of our sister circuits, resulting in a circuit split. The issue arises in the context of a very limited statutory exception to the general rule of appellate jurisdiction under 28 U.S.C. § 1291, which gives courts of appeal jurisdiction only over "final decisions" of the district courts. A final decision is, of course, one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (internal citation omitted). A district court's denial of the motion to stay proceedings pending arbitration is – obviously – not a final decision, making 28 U.S.C. § 1291 inapplicable. Furthermore, denials of motions to stay proceedings are not appealable as interlocutory orders denying injunctions under 28 U.S.C. § 1292(a)(1). *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988). However, Section 16(a)(1) of the Federal Arbitration Act confers jurisdiction over interlocutory appeals from the denial of a motion to stay (Section 3) or to compel arbitration (Section 4) under the Act.

Section 3, purportedly at issue here, makes available a stay of proceedings based upon "any issue referable to arbitration under *an agreement in writing* for such arbitration." 9 U.S.C. § 3 (emphasis added). The denial of a stay under Section 3 is then subject to interlocutory review under Section 16. The defendants in this case have invoked Section 16 as the basis for appeal, contending that the arbitration provisions in the investment management agreements between the plaintiffs and Bricolage Capital permit them to seek a stay under Section 3 because the action brought by the plaintiffs involves an issue that is referable to arbitration under "an agreement in writing" – even though the defendants are not signatories to the written agreement in question and are instead seeking to compel arbitration with the signatories to a contract with a third party that is no longer involved in these proceedings. In advancing their equitable-estoppel argument, the defendants rely on a Second Circuit case, *Ross v. American Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007). However, we find the analysis in *Ross* to be less persuasive than that of two other circuit decisions, *DSMC Inc. v. Convera Corp.*, 349 F.3d 679 (D.C. Cir. 2003), and *In re Universal Service Fund Telephone Billing Practice Litigation v. Sprint Communications Co., L.P.*, 428 F.3d 940, 944-45 (10th Cir. 2005). In the absence of a controlling decision in this circuit, we opt to follow the reasoning and result in the latter two opinions.

The litigation in *DSMC Inc.* stemmed from a contract between National Geographic Television Library, Inc., and DSMC Inc. for the performance of media archiving for National Geographic. When it became dissatisfied with DSMC's performance, National Geographic hired Convera to do the work instead. *See DSMC Inc.,* 349 F.3d at 681. In a procedurally complicated case, DSMC sued Convera, and National Geographic sought to intervene and stay the proceedings under Section 3, based on pending arbitration between National Geographic and DSMC under their contract. National Geographic claimed that the DSMC/Convera litigation and the DSMC/National Geographic dispute had parallel issues and that, although DSMC and Convera did not have an agreement to arbitrate, DSMC should be equitably estopped under Section 4 from refusing to arbitrate with Convera. The district court denied the motion. *See id.*

On appeal, the D.C. Circuit held that because there was no actual written agreement between DSMC and Convera, there was no jurisdiction to review the district court's decision under Section 4, regardless of the fact that an equitable estoppel argument could be advanced. As the court noted, "Section 4 does not merely require that there be a written agreement somewhere in the picture . . . [but] that the motion to compel be based on an alleged failure to arbitrate under that written agreement." *See id.* at 683. "Even assuming that the issues involved in the DSMC/Convera litigation and the DSMC/NGTL arbitration are identical, intertwined, closely related, whatever – a matter of hot dispute – the litigation may not be stayed under Section 3 because the issues in the litigation are not referable to arbitration under an agreement." *Id.* at 684 (internal quotations omitted). The court therefore rejected Convera's motion to compel, describing it as "an effort to expand DSMC's obligation *beyond* the terms of that written agreement pursuant to principles of equitable estoppel," *id.* at 683 (emphasis in original), and noting that evaluation of a claim of equitable estoppel "would require this court to delve deeply into the merits of a case before even deciding whether we had interlocutory appellate jurisdiction – an unattractive prospect." *Id.* at 684. Instead, the court emphasized the need for jurisdictional rules that are, "to the extent possible, clear, predictable, bright-line rules that can be applied to determine jurisdiction with a fair degree of certainty from the outset." *Id.* at 683 (citing *Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527, 547 (1995). "Asking whether the parties are signatories to a written agreement to arbitrate satisfies these criteria," the court observed, while "the application of equitable estoppel – if permitted in this context – requires a multifactor factual and legal inquiry to determine whether the issues to be litigated by the non-signatory and signatory are sufficiently intertwined with the issues subject to arbitration." *Id.* at 683-84.

The Tenth Circuit case, *Universal Services Fund*, involved a multi-district class-action antitrust suit filed by telephone customers against defendants Sprint and AT&T, charging them with conspiring between themselves and with MCI Worldcom to violate the Federal Communications Act by passing along to their customers the cost of required contributions to the Universal Services Fund, a federal subsidy for low-income consumers. *See In re Universal Serv. Fund Tel. Billing Practice Litig.,* 300 F.Supp.2d 1107, 1114-15 (D. Kan. 2003). Because MCI Worldcom and its various entities had filed for bankruptcy, the plaintiffs were precluded from naming them as defendants in the litigation. The district court granted the defendants' motions to compel arbitration with various named plaintiffs, under agreements that had been entered when those plaintiffs signed up as residential telephone customers with Sprint and AT&T. The court also forced the plaintiffs to arbitrate their claims against MCI, even though they had not entered a written agreement with MCI and were, therefore, non-signatories to the contracts running between MCI and its residential customers, citing "notions of equity and fairness." *Id.* at 1140. Some months later, the two defendants also sought to compel arbitration of the claims brought by MCI's *business* customers and to stay the proceedings, even though they also had no arbitration agreements with those customers. The district court denied a stay, citing waiver. *See In re Universal Serv. Fund Tel. Billing Practice Litig.*, 320 F.Supp.2d 1135, 1138 (D. Kan. 2004).

On appeal, the Tenth Circuit left open the possibility that non-signatories might be compelled by principles of equitable estoppel to arbitrate, noting that "[t]he issue in this appeal is not whether [the defendants] have a right to compel arbitration, but whether they have a right to an interlocutory appeal from the denial of a motion seeking to compel arbitration." *In re Universal Serv. Fund Tel Billing Practice Litig.*, 428 F.3d at 945. Embracing the D.C. Circuit's analysis in *DSMC Inc.*, the court dismissed the appeal for lack of jurisdiction under Section 16(a)(1)(A) and (B). *See id.* at 941.

We find the statutory analysis in *DSMC Inc.* and *Universal Service Fund* superior to the circular reasoning employed by the Second Circuit in *Ross v. American Express Co.*, another multi-district antitrust class action, in which credit cardholders sued VISA and MasterCard and their member banks, charging a conspiracy to fix fees for the conversion of foreign currencies. *See Ross*, 478 F.3d at 97. When the plaintiffs filed a second class action suit against American Express

(Amex), asserting the same claims, Amex moved to dismiss or to compel arbitration even though it was not a signatory to the arbitration agreements between the two other credit card companies and their customers. *See id.* at 98. The district court denied the motion to compel, citing the plaintiffs' antitrust claim concerning the validity of the arbitration clauses at issue. *See id.* On appeal, the circuit court rejected the plaintiffs' motion to dismiss for lack of jurisdiction under Section 16(a)(1), despite the absence of a written agreement to arbitrate with Amex. The court recognized that "arbitration is strictly a matter of contract" but held that the district court's finding that the claims against the defendant were "'inextricably intertwined' with the [arbitration] agreements . . . meets the writing requirement of the [Federal Arbitration Act]." *Id.* at 99. To bolster this holding, the Second Circuit pointed to other cases, both within and outside the Second Circuit, in which arbitration had been compelled under the Act on the basis of equitable estoppel. *See id.* But in none of those cases does it appear that the appellees raised the issue of appellate jurisdiction to review the question on an interlocutory basis. *See e.g., In re Humana Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002) (interlocutory review of arbitration forced on non-signatories on the basis of equitable estoppel, apparently without regard to issues of jurisdiction, in a case pre-dating *DSMC Inc.* and *Universal Service Fund*). As a result, we find the Second Circuit's analysis unpersuasive.

## *CONCLUSION*

For the reasons set out above, we read the plain language of 9 U.S.C. § 16(a)(1) to preclude appellate jurisdiction at this stage of the litigation between the parties, and we therefore DISMISS the appeal and REMAND this case to the district court for further proceedings.